UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**PEGGY HILL**                                                               **PETITIONER**

v.                     **CASE NO.  4:06-CR-00281-01 GTE**
                              **(4:08-CV-00274)**

**UNITED STATES OF AMERICA**                                        **RESPONDENT**

## ORDER PARTIALLY RESOLVING REQUEST FOR COLLATERAL RELIEF

Presently before the Court is Petitioner Peggy Hill's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence filed on April 1, 2008.  The motion is fully briefed.  For the reasons explained below, the Court rejects all arguments for relief put forth by Petitioner except one.  The Court takes under advisement Petitioner's claim that her counsel provided ineffective assistance by failing to appeal her sentence.  A hearing is presently scheduled on September 24, 2008, to address that issue.

**I.      BACKGROUND**

On January 4, 2007, Petitioner and her counsel appeared before this Court, and pursuant to a written plea agreement, waived indictment, and entered a plea of guilty to Count One of a Superseding Information.  The Superseding Information charged Petitioner with conspiracy to knowingly and intentionally manufacture at least 50 grams, but less than 500 grams, of a mixture or substance containing methamphetamine, a Schedule II controlled substance, in violation of 18 U.S.C. §§ 841(a)(1), (b)(1)(B) and 846.  The Court dismissed Count 1 of the Indictment[1] as to

---

[1]Petitioner was initially charged in Count 1 of a two-count Indictment with conspiracy to knowingly and intentionally manufacture more than 500 grams of a mixture or substance containing methamphetamine, a Schedule II controlled substance, in violation of 18 U.S.C. §§

1

Petitioner upon motion of the Government.

On April 2, 2007, the Court sentenced Petitioner to 80 months' imprisonment, 4 years of supervised release with conditions, and $100 special assessment. During the sentencing hearing, the Court asked the Petitioner and her counsel if there were any "factual errors or mistakes in the [pre-sentence] report."[2] The defendant did not provide any corrections, and defense counsel stated, "There are not, your Honor."[3] The Court stated that it would rely upon the factual information contained in the report and consider it in reaching a proper and just sentence.[4]

## II.  MOTION

In her motion, Petitioner sets forth the following points of error:

First Point of Error: Did the district [c]ourt err, or in the alternative, was Counsel ineffective for failure to challenge or object to assessed criminal history pursuant to *Shepard v. United States*, 544 U.S. 13 (2005).

Second Point of Error: In a Post-*Booker* proceeding, should assessed criminal history points be also "advisory only" and permit the sentencing Court discretion to mitigate the sentence considered; if so, was counsel ineffective for failure to preserve and appeal such a determination, or argue for mitigating role reduction at sentencing

Third Point of Error: Was counsel ineffective, or in the alternative did Respondent breach the plea agreement by failing to motion the Court for sentence reduction pursuant to § 5K1.1 *U.S.S.G.*?

Fourth Point of Error: Did Counsel provide *per se* ineffective assistance by failing

---

841(a)(1), (b)(1)(A) and 846.

[2]*See* Petitioner's Exhibit 3, Sentencing Transcript, p. 3.

[3]*See* Petitioner's Exhibit 3, Sentencing Transcript, p. 3.  Defense counsel only noted that the Government had since moved for the third point, resulting in a one-point reduction in Petitioner's offense level.

[4]*See* Petitioner's Exhibit 3, Sentencing Transcript, p. 4.

to file direct appeal even though requested by Movant, or in the alternative, was he at a minimum, obligated to file a "no merits" brief pursuant to *Anders v. California*, to fulfill his obligation to his client?

To show ineffective assistance of counsel in the context of a guilty plea, Petitioner must establish: "(1) counsel's performance fell below the *Strickland*[5] standard of reasonableness; and (2) there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty but would have proceeded to trial." *United States v. Davis*, 508 F.3d 461, 463 (8th Cir. 2007). Courts are not required to analyze the performance prong if they determine that the defendant suffered no prejudice as a result of the allegedly deficient performance. *Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997). As pointed out in the leading case of *Strickland v. Washington*, 466 U.S. 668 (1984), in evaluating counsel's conduct "judicial scrutiny of a counsel's performance must be highly deferential." *Id*. at 689.

Before the Court may consider the merits of Petitioner's claim, it must decide whether Amendment 709, effective November 1, 2007, applies to Petitioner's case since she was sentenced under the 2006 version of the guidelines on April 2, 2007. Amendment 709 amended two areas of the Chapter Four criminal history rules: the counting of multiple prior sentences and the use of misdemeanor and petty offenses in determining a defendant's criminal history score. It appears that both parties initially assumed that the 2007 amended version of the Guidelines applies. However, the Government has subsequently filed a brief in support of the proposition that Amendment 709 is substantive, rather than clarifying, and thus, does not apply retroactively to Petitioner's sentence.

---

[5]*Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).

### A.     Does Amendment 709 apply to Petitioner's Case?

U.S.S.G. § 1B1.11 provides that "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." *See also Untied States v. Adams*, 509 F.3d 929, 932 n.4 (8th Cir. 2007) (noting that Amendment 709 was inapplicable to the case on direct appeal, as the court must apply the Guidelines that were in effect on the date of appellant's sentencing unless the use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the ex post facto clause of the United States Constitution, in which case the court is directed to use the Guidelines Manual in effect on the date that the offense of conviction was committed)). *See also* 18 U.S.C. § 3553(a)(4) (instructing courts to consider the guidelines "in effect on the date the defendant is sentenced"). Thus, the Court properly applied the 2006 version of the Guidelines in sentencing Petitioner.

But, the Eighth Circuit has stated that insofar as a post-sentence amendment is clarifying, rather than substantive, the Court may rely on it in interpreting the unamended Guideline. *United States v. Renfrew*, 957 F.2d 525, 527 (8th Cir. 1992). There is some authority to suggest that if Amendment 709 is clarifying, rather than substantive, the Court may retroactively apply Amendment 709 to Petitioner's case. *See United States v. Marmolejos*, 140 F.3d 488, 491 (3d Cir. 1998) (holding that if Amendment 518 clarified the existing commentary in the Guidelines, petitioner's section 2255 habeas petition should be granted and the district court should consider the amendment at a resentencing hearing, but if it substantively changed its meaning, the motion should be denied and the amendment given no effect). Thus, the Court must consider whether Amendment 709 was clarifying or substantive.

Courts previously confronted with this issue have consistently held that Amendment 709

is substantive, rather than clarifying. *See United States v. Marler*, 2008 WL 2220409, at *6 (9th Cir. May 29, 2008) (stating on direct appeal that "[t]he 2007 amendment accordingly was a substantive change, not a clarifying change, and does not apply retroactively.") (citing *United States v. Wood,* 2008 WL 1902663, at *4 (3d Cir. May 1, 2008) (holding that "the amended version of § 4A1.2(a)(2) effects a substantive change" and therefore did not apply retroactively, reasoning that Amendment 709 does not incorporate the "relatedness" concept into the main body of § 4A1.2, removes "any consideration of whether the offenses in question share any temporal proximity or factual relationship," and "fails to mention the notion of consolidation"); *United States v. Godin,* 522 F.3d 133, 135 (1st Cir. 2008) (holding that Amendment 709 was substantive, stating that "[t]he Commission said that a conflict existed as to the interpretation of the earlier guideline and, in lieu of clarification in favor of one view or the other, it adopted a new blanket rule that eliminates the ambiguity by going beyond any circuit's reading of the previous rule"); *Munoz v. United States*, 2008 WL 1981535, *2-3 (M.D. Pa. May 2, 2008) (holding that "Amendment 709 is substantive alone, and therefore, not retroactive").

This Court agrees with other courts to consider the issue. Amendment 709 may not be applied retroactively.

### B.   Petitioner's First Ground

Petitioner first argues that this Court's reliance upon an incorrect assessment of her criminal history in her Pre-Sentence Investigation Report ("PSR") is a fundamental defect cognizable under 28 U.S.C. § 2255 and that her counsel's failure to detect and inform the Court of same constitutes ineffective assistance of counsel. Petitioner asserts that the criminal history analysis in her PSR incorrectly assesses four points pursuant to U.S.S.G. § 4A1.1(c) and two

additional criminal history points pursuant to U.S.S.G. § 4A1.1(d).[6]

Petitioner relies upon *Shepard v. United States*, 544 U.S. 13 (2005), in arguing that counsel was ineffective in failing to require the Government to produce documentation of conduct attributable to her prior criminal history because she did not admit in open court to such conduct. However, "[i]n the absence of a defendant's objection to the facts set forth in a PSR, a district court may assume them to be true." *United States v. Hunter*, 505 F.3d 829, 831 (8th Cir. 2007). "When a defendant admits the facts surrounding a prior conviction by failing to object to them, a district court may consider those facts without conducting the analysis set forth in *Shepard v. United States*, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005)." *Hunter*, 505 F.3d at 831 (citing *United States v. Chauncey*, 420 F.3d 864, 878 (8th Cir. 2005) (concluding that *Shepard* is inapplicable where a defendant admits facts by failing to object to them within the PSR)). *See also United States v. Reliford*, 471 F.3d 913, 916 (8th Cir. 2006) ("[I]f the defendant fails to object to the fact statements in the [PSR] establishing that a prior offense was a violent felony conviction, the government need not introduce at sentencing the documentary evidence that *Taylor* and *Shepard* otherwise require."). Contrary to Petitioner's assertion, she did not note any "factual errors or mistakes" in the PSR, which includes the facts underlying the prior convictions set forth below each conviction. Importantly, Petitioner still fails to set forth any facts that were "inaccurate" contained within the PSR. Therefore, the Court will rely upon the facts contained in the PSR.

According to the PSR, Petitioner received one criminal history point pursuant to U.S.S.G. § 4A1.1(c) for each the following offense groups: (1) Criminal attempt; (2) Possession of

---

[6]Although Petitioner cites subsection (b), it is clear that the PSR cites subsection (d).

Hydrocodone and eleven counts of Obtaining drugs by fraud; (3) Hot Check; (4) Hot Check; (5) Possession of methamphetamine with intent to deliver, Possession of drug paraphernalia, Possession of Clonazepam with intent to deliver, Possession of Alprazolam with intent to deliver, Possession of Ambien, and Possession of Diazepam; (6) Obtaining drugs by fraud and Obstructing government operations; and (7) Hot Check, for a total of seven criminal history points. However, the PSR counted only four of these points when calculating Petitioner's Criminal History Category pursuant to U.S.S.G. § 4A1.1(c).

Petitioner asserts that the PSR incorrectly "assessed one point for each of concurrent sentencings on related 'same course of conduct' matters before the same judge on the same day." Prior to its November 1, 2007 amendment,[7] U.S.S.G. § 4A1.2(a)(2) provided:

> Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c). Use the longest sentence of imprisonment if concurrent sentences were imposed and the aggregate sentence of imprisonment imposed in the case of consecutive sentences.

---

[7]Effective November 1, 2007, Amendment 709 changed U.S.S.G. § 4A1.2(a)(2) to read as follows:
> If the defendant has multiple prior sentences, determine whether those sentences are counted separately or as a single sentence. Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence. See also § 4A1.1(f).
>
> For purposes of applying § 4A1.1(a), (b), and (c), if prior sentences are counted as a single sentence, use the longest sentence of imprisonment if concurrent sentences were imposed. If consecutive sentences were imposed, use the aggregate sentence of imprisonment.

Application Note 3 to U.S.S.G. § 4A1.2 stated:

> Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense).  Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing. . . .

The PSR indicates that Petitioner was sentenced for both (1) Criminal attempt and (2) Possession of Hydrocodone and the eleven counts of Obtaining drugs by fraud on April 1, 2004, and received a total of two criminal history points.  The PSR states that Petitioner was arrested on the criminal attempt charge on July 12, 2003.  The PSR also indicates that the conduct resulting in the Obtaining drugs by fraud charge occurred from July 1, 2003 through August 28, 2003, and that Petitioner was found to be in possession of Hydrocodone on September 12, 2003, the date that she was arrested for obtaining drugs by fraud and possession of Hydrocodone.

The Court finds that the offenses were separated by an intervening arrest because Petitioner was arrested for the first offense prior to completing her commission of the second offense.  Furthermore, even if the Criminal attempt and eleven counts of Obtaining drugs by fraud charges should be counted as a single sentence because there was no intervening arrest, there was an intervening arrest between the Criminal attempt and possession of Hydrocodone offenses.  Therefore, Petitioner correctly received two criminal history points for these offenses.

The PSR also indicates that Petitioner was sentenced for (3) Hot Check and (4) Hot Check on May 5, 2005, and received a total of two criminal history points.  The PSR states that Petitioner was arrested on the first Hot Check charge on February 9, 2004, due to writing an insufficient check on September 30, 2003.  The PSR also states that the conduct resulting in the

second Hot Check offense occurred from December 23, 2003, until May 13, 2004. The Court finds that the offenses were separated by an intervening arrest because Petitioner was arrested for the first hot check offense prior to completing her commission of the second hot check offense. Therefore, Petitioner correctly received two criminal history points for these offenses.

Additionally, the PSR indicates that Petitioner was sentenced for (5) Possession of methamphetamine with intent to deliver, Possession of drug paraphernalia, Possession of Clonazepam with intent to deliver, Possession of Alprazolam with intent to deliver, Possession of Ambien, and Possession of Diazepam and (6) Obtaining drugs by fraud and Obstructing government operations on December 1, 2005, and received a total of two criminal history points. The PSR does not provide sufficient information to determine when the offense conduct occurred. However, even assuming Petitioner should only receive one point for these offenses, Petitioner would still has four criminal history points. Therefore, the Court need not make a determination on this issue to reject Petitioner's argument.

Petitioner also asserts that the hot check violations should not have been counted pursuant to U.S.S.G. § 4A1.2(c). Prior to its November 1, 2007 amendment,[8] U.S.S.G. § 4A1.2(c)

---

[8]Effective November 1, 2007, Amendment 709 changed U.S.S.G. § 4A1.2(c) to read as follows:
> Sentences for misdemeanor and petty offenses are counted, except as follows:
> (1) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are counted only if (A) the sentence was *a term of probation of more than one year* or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense:
> . . .
> Insufficient funds check
> . . .

(Emphasis added).

provided:

> Sentences for misdemeanor and petty offenses are counted, except as follows:
> (1)   Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are counted only if (A) the sentence was *a term of probation of at least one year* or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense:
> > . . .
> > Insufficient funds check
> > . . .

(Emphasis added). Petitioner was sentenced to a term of probation for twelve months, or at least one year, for each of the three hot check offenses for which Petitioner received criminal history points. Under the 2006 version of the Guidelines, Petitioner's hot check convictions clearly counted toward her criminal history. Thus, Petitioner's argument is without merit.

To the extent that the petition can be construed to assert that the PSR incorrectly assesses two additional criminal history points pursuant to U.S.S.G. § 4A1.1(d), such argument is without merit. U.S.S.G. § 4A1.1(d) (2006) provides, "Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation . . . ." Paragraph 41 of the PSR adds two points to Petitioner's Criminal History Computation because she committed the instant offense while under a criminal justice sentence. Specifically, the PSR states that Petitioner was placed on three years probation on April 1, 2004, and the instant offense occurred from August 2005 until June 22, 2006.

The Court concludes that Petitioner was correctly assessed four points pursuant to U.S.S.G. § 4A1.1(c) and two additional criminal history points pursuant to U.S.S.G. § 4A1.1(d). Therefore, Petitioner cannot establish either that her counsel's performance fell below the *Strickland* standard of reasonableness or that there is a reasonable probability that but for

counsel's errors, she would not have pleaded guilty but would have proceeded to trial. Petitioner's claim fails.

      **C.**     **Petitioner's Second Ground**

Petitioner asserts that post-*Booker* criminal history points should be considered "advisory" to permit the sentencing Court discretion to mitigate the sentence. Petitioner also asserts that counsel was ineffective for failure to preserve and appeal such a determination.

In response, the Government asserts that the Seventh and Ninth Circuits have examined the issue at bar and determined that criminal history points are not advisory. *See United States v. Ocampo*, 2007 WL 1849427 (7th Cir. July 19, 2007) (holding that "criminal history points are not themselves advisory[,]" and that "[e]ven after Booker, courts must correctly calculate criminal history points"); *United States v. Hernandez-Castro*, 473 F.3d 1004, 1006 (9th Cir. 2007).

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 128 S. Ct. 586, 596 (2007). Although the Eighth Circuit has "not yet been called upon to decide whether the calculation of criminal history points is rendered advisory after *Gall* and *Kimborugh*[,]" the court has noted that "several of our sister circuits have determined that the calculation of criminal history points is not advisory." *United States v. Leon-Alvarez*, 2008 WL 2345031, *3 (8th Cir. June 10, 2008) (citing *United States v. Hernandez-Castro,* 473 F.3d 1004, 1007 (9th Cir. 2007) (stating that "*Booker* did not affect the imposition of statutory minimums"); *United States v. McKoy,* 452 F.3d 234, 239-40 (3d Cir. 2006) (stating that 18 U.S.C. § 3553(f)(1) was left intact after *Booker*); *United States v. Brehm,* 442 F.3d 1291, 1300 (11th Cir. 2006) (holding that "the Supreme Court's decision in

*Booker* did not render the calculation of eligibility requirements for safety-valve relief advisory ..."); *United States v. Barrero,* 425 F.3d 154, 157-58 (2d Cir. 2005) (rejecting appellant's argument that 18 U.S.C. § 3553(f)(1) is rendered advisory by *Booker*); *United States v. Carpenter,* 406 F.3d 915, 917 (7th Cir. 2005) (stating that "[c]riminal history is all about prior convictions; its ascertainment therefore is an issue of law excluded by *Booker's* own formulation ..."); *United States v. Mendoza-Borunda,* 239 Fed. Appx. 416, 419 (10th Cir. 2007) (unpublished) (stating that "the district court correctly concluded that it could not ignore one of [the defendant's] criminal history points in order to make him eligible for safety-valve relief")).

Petitioner attempts to distinguish *Ocampo* and *Hernandez-Castro* by stating that both cases address only whether the requirements of the safety valve, pursuant to 18 U.S.C. §3553(f)(1), remained intact. The Court finds that Petitioner's argument is without merit. As stated above, the Court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range, which requires the Court to correctly calculate the Defendant's criminal history points. Of course, at that point, the Court is not bound to impose a sentence within the recommended Guidelines range, as the Guidelines are advisory.

Petitioner further asserts that counsel was ineffective for failure to argue for mitigating role reduction at sentencing. Essentially, Petitioner asserts that her counsel was ineffective for failing to argue that the Court should have reduced her offense level by applying a mitigating role reduction pursuant to U.S.S.G. § 3B1.2. Petitioner asserts that her counsel should have attempted to prevent the inclusion of the clause preventing consideration of a reduction under U.S.S.G. § 3B1.2, especially considering that the Government was not forthcoming in filing a motion pursuant to U.S.S.G. § 5K1.1.

Petitioner states that in pleading to the Superseding Information, she only admitted to "at least 50 grams, but less than 500 grams, of a mixture or substance containing methamphetamine," whereas a total of 73.48 kilograms was attributed to the entire conspiracy. Petitioner further states that she confessed guilt "solely" to the one date of arrest in Mississippi.[9] She contends that these facts demonstrates that her role was at least minor and that she was plainly less culpable than those involved in the conduct of the group.

The Government contends that Petitioner's counsel was not ineffective for failing to request a mitigating role reduction pursuant to U.S.S.G. § 3B1.2 because Petitioner was not entitled to a mitigating role reduction pursuant to the Plea Agreement that she entered into with the United States and which the Court approved. The plea agreement stipulates as follows: "Neither party shall seek any enhancements or reductions in sentence under U.S.S.G. 3B or 5K other than those specifically set out in this agreement."[10] The Government states that by signing the Plea Agreement, Petitioner acknowledged that she understood and voluntarily agreed to the terms and conditions of the Agreement,[11] and that the Agreement constituted a legal, valid, and binding obligation on her.

In her response, Petitioner states that the issue at bar "turns upon whether or not her attorney had prior knowledge of the Government's intent to walk away from its enticement under the Plea Agreement, to file a motion for reduction."

---

[9]The PSR states, "During the presentence interview, Ms. Hill admitted her involvement in the offense solely as to the one date of arrest in Mississippi." Exhibit 1 ¶ 13, Plaintiff's Motion.

[10]Exhibit 4 ¶ 6F, Plea Agreement, Petitioner's Motion.

[11]Exhibit 4 ¶ 18A, Plea Agreement, Petitioner's Motion.

The Court finds that Petitioner's argument is without merit. The Plea Agreement expressly stipulates that Petitioner is not eligible for a mitigating role reduction pursuant to U.S.S.G. § 3B1.2. Petitioner received a significant benefit under the Plea Agreement. The Court agrees with the Government that Petitioner's attorney was not ineffective and did not prejudice her by abiding by the terms of the Plea Agreement voluntarily entered into by Petitioner. Furthermore, as discussed below, the Government did not breach the terms of the Plea Agreement with regard to a motion for reduction pursuant to U.S.S.G. § 5K1.1.

### D.   Petitioner's Third Ground

Petitioner asserts that her counsel was ineffective by failing to motion the Court for sentence reduction pursuant to U.S.S.G. § 5K1.1. In the alternative, Petitioner asserts that Respondent breached the plea agreement by failing to motion the Court for sentence reduction pursuant to U.S.S.G. § 5K1.1.

The Government asserts that Petitioner's arguments are without merit. The Government states that its decision not to motion for reduction was not based on an improper motive, unconstitutional motive, or irrational determination. Rather, the Government contends that no motion for substantial assistance was filed because Petitioner has failed to provide substantial assistance since she was indicted and pled guilty.

Petitioner replies by stating that it is her substantial assistance prior to her guilty plea, but before the Government's indictment of some of her co-defendants, that entitles her to a motion for reduction. Petitioner relies upon her affidavit to support her assertion that the Government's failure to file the motion was based upon unconstitutional motive or was irrational. In her affidavit, Petitioner states:

14

2. On the day [Mr. Larkowski] presented me with a plea agreement proffered by the Government, he assured me that I was looking at a sentence of no more than 40 months because of my cooperation with the Government. "Just enough time to do the drug program and go home".

3. At all times relevant, he represented that I would receive a substantial assistance motion that would be filed by the Government if I executed the Plea Agreement as submitted.

4. At all times relevant, I believed the representations of my attorney and used those representations as the basis for my decision to plea guilty and acceptance of the terms and conditions set forth in the Plea Agreement.

5. On the day that I was sentenced to 80 months of incarceration, April 02, 2007, Mr. Larkows[k]i, informed me that "he knew that was going to happen" and hadn't informed because he didn't want me to "freak out".

"The government has no duty to make a substantial assistance motion unless it has entered into a plea agreement with the defendant that creates such a duty." *Untied States v. Ziesman*, 409 F.3d 941, 956-57 (8th Cir. 2005) (citations omitted). "If the government expressly reserves discretion through a plea agreement or other instrument, courts 'will perform only a limited review of the decision not to file a motion for downward departure for substantial assistance.'" *Davis*, 397 F.3d at 676 (quoting *United States v. Hardy,* 325 F.3d 994, 996 (8th Cir. 2003)).

"The exception to the otherwise broad discretion of the government to file a motion for substantial assistance is triggered when the government's refusal was 'irrational, in bad faith, or based on an unconstitutional motive.'" *Id*. (quoting *United States v. Licona-Lopez,* 163 F.3d 1040, 1042 (8th Cir. 1998)). "In order to show that the government's refusal was irrational, in bad faith, or based upon an unconstitutional motive, the defendant must make a 'substantial threshold showing'-[the defendant] must present evidence tending to show that the decision in

the case was not rationally related to a legitimate government interest." *Id.* (citing *Wade v. United States,* 504 U.S. 181, 186, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992); *United States v. Romsey,* 975 F.2d 556, 558 (8th Cir. 1992)). "This showing must involve clear evidence that the prosecutor's motive was improper, rather than a mere allegation that substantial assistance was provided and that the prosecutor had an improper motive for declining to file a motion for downward departure." *United States v. Fields*, 512 F.3d 1009, 1011 (8th Cir. 2008). "After a substantial threshold showing of irrationality, bad faith, or unconstitutionality is made, the defendant is entitled to discovery or an evidentiary hearing." *Davis*, 397 F.3d at 676 (citing *Wade,* 504 U.S. at 186, 112 S.Ct. 1840 ("[A] defendant has no right to discovery or an evidentiary hearing unless he makes a 'substantial threshold showing.'")).

As to Petitioner's argument that his counsel was ineffective for failing to move for sentence reduction pursuant to U.S.S.G. § 5K1.1, "[a]bsent a motion by the government, a district court generally lacks the authority to grant a downward departure based on a defendant's substantial assistance." *United States v. Davis*, 397 F.3d 672, 676 (8th Cir. 2005) (quoting *United States v. Wolf,* 270 F.3d 1188, 1190 (8th Cir. 2001)). Furthermore, as noted above, the Plea Agreement expressly stipulates, "Neither party shall seek any enhancements or reductions in sentence under U.S.S.G. 3B or 5K other than those specifically set out in this agreement." The Plea Agreement also states, "The defendant further understands and agrees that the defendant may not seek directly, or indirectly through another person, any reduction of sentence based on cooperation offered or provided in the absence of a motion by the United States." Petitioner's counsel was not ineffective and did not prejudice her by failing to breach the terms of the Plea Agreement voluntarily entered into by Petitioner, as Petitioner's breach of the plea agreement

could have seriously prejudiced Petitioner.

As to Petitioner's argument that the Government breached the Plea Agreement, as the Government notes, section 5B of Petitioner's Plea Agreement sets forth the provisions regarding a possible sentence reduction if Hill provided the United States with substantial assistance. Specifically, paragraph two provides, "If, in the sole and absolute discretion of the United States, the defendant's cooperation constitutes substantial assistance within the meaning of the Sentencing Guidelines, the United States will make a motion to the Court for a sentence reduction."[12] Paragraph five states, "The defendant understands that this Agreement confers no right upon the defendant to require that the United States make a motion for sentence reduction and confers no right or remedy in favor of the defendant in the event that the United States determines that no such motion should be filed."[13] Clearly, the plea agreement expressly reserves to the Government the discretion not to file a motion for downward departure for substantial assistance.

Petitioner has failed to make a substantial threshold showing of irrationality, bad faith, or unconstitutionality because she has failed to present evidence tending to show that the decision was not rationally related to a legitimate government interest. Additionally, Petitioner has failed to set forth clear evidence that the prosecutor's motive was improper.

### E.   Petitioner's Fourth Ground

Petitioner asserts that her counsel provided *per se* ineffective assistance by failing to file a

---

[12] Exhibit 4 p. 4, Plea Agreement, Petitioner's Motion.

[13] Exhibit 4 p. 4, Plea Agreement, Petitioner's Motion.

direct appeal as she requested, or alternatively, for failing to at least file a "no merits" *Anders* brief.  In her affidavit, Petitioner states:

> 6.  On that same day [the day of sentencing], when I told [Mr. Larkowski] that I wanted to appeal, he strongly advised against it [] by convincing me that "I faired pretty well considering that I could end up with more time if I tried.
>
> 7.  Before the end of the first week after sentencing, I called him at his office and told him that I really felt I should appeal.  He told me that before he could anything, "he needed more money first."
>
> 8.  Since I didn't have any more money, I thought there was nothing I could do about it and didn't know who or where to turn for legal advise [sic].
>
> 9.  I did then and do now, wish to proceed with a direct appeal of the issues and claims raised in my Motion to Vacate, as well as any other claims that different and competent counsel may advise.[14]

In *Roe v. Flores-Ortega*, 528 U.S. 470, 480, 120 S. Ct. 1029, 1036 (2000), the United States Supreme Court held "that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." "In making this determination, courts must take into account all the information counsel knew or should have known." *Id*.  "Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id*.  "Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as

---

[14]Exhibit 5 ¶ 6-9, Petitioner Affidavit, Petitioner's Motion.

18

part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id*. "Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal." *Id*.

"The second part of the *Strickland* test requires the defendant to show prejudice from counsel's deficient performance." *Id*. at 481. "[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id*. at 484.

In response, the Government asserts that Hill "never asserts that she asked her counsel to file an appeal on her behalf." Rather, the Government state that "it can be inferred that Hill discussed the potential of appealing with her counsel because she states that he 'strongly advised against' appealing." The Government contends that Hill merely sought her counsel's opinion as to appealing the sentence, which amounts to a mere conclusory allegation lacking any support in the record.

It appears that the Government has overlooked Petitioner's sworn affidavit in which she states that she told her counsel that she "wanted to appeal" and later called his office and told him that she "really felt [she] should appeal." "[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable[;] defendant is entitled to a new appeal without showing that his appeal would likely have merit." *Parsons v. Untied States*, 505 F.3d 797 (8th Cir. 2007).

This issue can not be resolved on the present pleadings. A hearing is scheduled for

19

Wednesday, September 24, 2008, at 10:00 a.m. for the sole purpose of addressing this one remaining issue.

## CONCLUSION

For the reasons explained above,

IT IS HEREBY ORDERED THAT Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Docket No. 214) be, and it is hereby, DENIED as to all claims other than the claim that her trial counsel was ineffective for failing to file an appeal. That issue is taken under advisement and will be addressed during the upcoming September 24th hearing.

IT IS SO ORDERED this   16th   day of September, 2008.

_/s/Garnett Thomas Eisele_____
UNITED STATES DISTRICT JUDGE